Hamilton for the plaintiff.
On the facts stated in the case, the application of the general and established principles of the law of abandonment, is so clear and plain, that surely no objections can be raised on that point. The right cannot but be acknowledged, and therefore to anticipate any thing which may be urged against it, will not be attempted. The question on which we apprehend the defendant will most rely, and which, it must be confessed, is of sufficient importance, is whether the repurchase of the vessel by the supercargo, did not turn this technical total, into merely an average loss according to the decision of Saidler and Craig v. Church. So far from disputing the law of that decision, it is fully admitted; but the circumstances of that case, as well as those in the one Term Reports,* on the authority of which it was in a great measure determined, essentially vary from the pre- ° t ' J . 1 sent. In Saidler and Craig v. Church, and m the case *294 in Term. Reports, there was no abandonment before the repurchase. In this the reverse is the fact. By repurchase the court will please to understand, notice of repurchase ; for the mere fact, it is conceived, can by no means influence the question, If at any period, the right to abandon from what was known, perfectly and fully attached, if the event then disclosed warranted an abandonment, the right as it thus stood, cannot be impaired by any actually-existing fact which would, if known, have taken it away, In the decision to which allusion had been made, Lord Kenyon observed, there had been no abandonment before notice. It is true, in Saidler and Craig v, Church, the repurchase was not known till after the abandonment: but; this was followed by a subsequent proceeding of a very impressive nature, On the arrival of the vessel here, she was taken to, by the assured, repaired, fitted put, and sent on another voyage. What did this amount to ? What could it amount to but a complete adoption by the assured of the act of their agent, as done on their account ? The consequence is obvious: it turned into a partial, the claim that had been made for a total loss, This, therefore, constitutes a material difference between the two cases. But there is another circumstance equally important. In the present instance, when the offer to abandon was made, the assurer absolutely refused to accept it. In Saidler and Craig v. Church, they were merely passive, and made no reply. When the Mary came here, she was not employed and fitted out again, but as she was refused, she was sold at auction for the benefit of whom it might concern. Of what was done in the former case, there can be but one possible interpretation; that the assured took her back, and waived their abandonment, In this, no such thing can be inferred. Every act is consistent with the claim now made, There had been a clear right to abandon, and the abandonment had been refused. To sell the ship was a duty of the assured, and only to prevent to the assurer, a total loss, which, otherwise, must ultimately have resulted, ^he proceeds are doubtless to be accounted for; but they do not weaken the present claim. The, vessel, it will be *295 said, sold, for more than she cost; but what of that ? It 7 e is only so much the better for the underwriter. It does not alter the right which had before been exercised, and then stood unimpeached. The ground of the decision in Saidler and Craig v. Church, was that the plaintiff had waived his abandonment by taking possession, fitting out, &c. To govern this case by that, it must first be determined whether a sale at auction is equivalent to a fitting out; and this must be done, only because there was no offer of her after her arrival here. And even then it must be considered whether this, as a reiterated act, and doing no more than what had already been done and refused, was necessary to be repeated, The sale at auction was a conservative act, done merely to prevent any future deterioration. It was a measure dictated by what had already taken place. The former refusal continued as a guide to the plaintiff's future conduct, and on that he acted. The property was thrown into his hands, and it may, perhaps, be a question whether this did not of itself constitute him an agent for whomsoever concerned ? The repetition of the "offer of the vessel, was a work of supererogation. The waiver of the abandonment could never be considered as an act of intention, or premeditated design, It must arise from implication of law, and on the principle that a second nugatory offer, is, by law, absolutely necessary. That the mere selling a property insured is not a waiver of a previous abandonment, the decision of this very court has, it is believed, firmly established. InBowne v. the New York Insurance Company, after a refusal of an abandonment, thegoods arrived and were sold by the assured. Itwas held by this bench, that the sale was justifiable from the conduct of the underwriter. To be sure, a second offer might have been made, and had the advice of counsel been asked, it is more than probable it woujd ex cautela have been recommended: but it was by no means necessary, because the insurer had, from his conduct, rendered it superfluous. He, the person entitled to the ship, which was then in the hands of the plaintiff, constituted him, by the refusal to accept her, an agent, as the foreign *296 wrPers term it from necessity, lest an absolute loss of the " whole subject matter should, ensue. To preserve it, was to the advantage of all parties. If the plaintiff was to have it, his interest required that care should be taken of it; if it was to fall to the underwriter, certainly his equally 50, because he lessened his payment, and in the present case actually made a profit.
Hoffman contra! Whether the pre sent is to be consii dered as a partial or a total loss is, in fact, the only point in controversy. That it is partial, the defendant insists ; for this case is in no respect to be distinguished from that and Goold, decided in this court, and confirmed on a wrh °f errror; so that the principles there recognized, are now to be taken as the settled law of the land. There the damage to the cargo, did not affect the policy on the ship; because she was in a capacity to complete her voyage, though she'did not do it on account of the injury her cargo had sustained, in consequence of which it was ■'sold in Martinique. It follows, from the authority of thy case referred to, that as, in insurances, freight, vessel and cargo, are distinct interests, the total loss of one, by n.o means constitutes a right to abandon on the others. The underwriter on the ship, has nothing to do with the cargo ; and though the Mary was sold in St. Christophers, and thy voyage thus broken up, as it is termed, that did not give any rights to the assured on the vessel. The interests were totally unconnected; an insurance on the voyage being by no means synonimo.us with one on the ship. For this distinction, the court will find a sanction in Poole v. Fitsgeraid, Willes’s Rep. 641.* The fact however here was, that voyage was not lost, for the vessel arrived with a cargo an<^ earned freight. So that, "allowing the loss of the voyage to mean a loss of the ship, and therefore to give a right ° L 7 & 0 to abandon, and claim for a total loss, still that Joss had pot taken placy, as the vessel could have brought a full cargo, though not the original one. She had lost no freight to create even a technical loss of the voyage. She had earned pro rata freight to St. Christophers, and from St. Christophers here she made full freight. There was, not only *297 no loss of the voyage, but a profitable one performed ; and as to.the ship herself, she had arrived in perfect safety. Except, then, this case can be distinguished from Shaw and Goold, that decision must controul this, and the claim be only for an average, not for a total loss. The determination also in Saidler and Craig v. .Church, goes on all fours with the present case. The facts were exactly similar.* It has been attempted to discriminate between them, but there can, in operation of law, be no essential difference between taking possession of a vessel and fitting her out, and taking possession of her and selling her. If so, it can never be meant, from the bare transaction itself, to say it was otherwise, when the sale had been at an advance for more than she cost, and the surplus put in the plaintiff’s pocket. It is evident the plaintiff fully intended to adopt the purchase of his supercargo, vrho, it must be remembered, was also a part owner, and designed the ■ sale for his own use. The conclusion is almost inevitable, that where a man makes a sale of what was his own, to a profit, he does it for himself. It had been done by the plaintiff without consulting the underwriter : from his own will, and, in addition to this, what had been the conduct of the plaintiff since ? He had never once offered 'to account for the sales. If he had meant to have been considered as an agent for the underwriter, as suggested that he was from necessity, he would have offered to account for the profits. Instead of this, he has them now in his pocket, and can justify their being there, only on the ground of the repurchase having been made, on account of the former owners. *298 It had however been said, that in Saidler and Craig v. Church, the underwriters had been merely passive, hut here they had actually refused, and that from hence a diversity between the cases, would necessarily arise. Ill Saidler and Craig v» Church, what had passed amounted to, a refusal. An abandonment, followed by silence and nonacceptance, amounted to a refusal: for, he who does not accept, refuses» If, however, any variety does prevail in the two cases, in this it is stronger against the assured» In Saidler and Craig v» Church, the condemnation, sale, &c. were forcible; the result of a capture : but here they were-induced at the request and instance of the part owner and supercargo. The plaintiff has received his vessel, purchased in by his part owner; the underwriter, therefore, liable only for repairs. Insurance is no more than a contract of indemnity : if it is to be so considered now, the plaintiff can recover only for a partial loss»
, Harrison, for the defendant. The decision in Shaw and Goold is conclusive on the subject. To the judgment then pronounced, every man must accede, because, in insurances, the various subjects of vessel, freight, and cargo, are perfectly distinct: what, therefore, affected the one, by no means implicated the others. Suppose a total loss of cargo and freight, let it be either absolutely or technically so, the assured on the ship would not, from this, acquire any right to abandon. That must depend on other circumstances : it cannot turn on her ability or inability to carry her original cargo. If the vessel can be repaired for half her value, whether she be adequate tó the conveyance of her cargo or not, dan never give the assured a title to abandon, or claim as for a total loss of the ship. The vessel in-question had earned nearly her full freight: the original cargo had paid it; the substituted loading had done the same. How, then, could a total loss be claimed for that ship which was then profitably and advantageously em. ployed? Taking it, therefore, in the most complicated and connected point of view that could reasonably be suggested, there could not be a total loss of the vessel, while the freight was still subsisting. In order to establish this as¡ a total losg. *299 the plaintiff must still more closely unite the subjects of insur anee. He must advert to the incompetency of the ves- X sel to bring home the cargo, and urge this as the foundation of'his demand ; and because the voyage is broken up on the cargo, the loss of the ship is necessarily to be inferred. This — is in direct opposition to Shaw and Goold, the contrary of which was expressly determined. The trifling variations of that case from this, cannot alter the point, for it is not every little change and alteration of circumstances, or any slight change, that would take one out of another. Should that decision not be sufficient to incline the court in favor of the defendants, Saidler and Craig v. John B. Church, will govern the question. In that, as in this, it must be evident from all the circumstances, that the purchase was for the benefit and on account of the assured. The property, when in the power of the plaintiff, was never offered to the defendants, and that alone is a waiver of the abandonment. In favour of such a construction, the facts now before the court are stronger than those of Saidler and Craig V. Church. There the sale was involuntary and compulsive, here it was not only voluntary once, but twice ; and the first sale, even at the request of.the supercargo and joint owner. Nor was this the whole from whence the construction of the purchase being on account of the defendant, might he drawn. There was a shipment, a cargo taken on board on account of the assured. In other respects the cases were alike. In that, an abandonment not accepted, in this, an abandonment refused. In one case the vessel was employed, in the other she was sold. Had not the underwriters a right tobe consulted as to the time, place, and manner of the sale How does it appear that they were not willing to retain her ? The plaintiff should have offered them the freight, with the amount of the charges for repairs, See. and then have claimed compensation under his policy. Instead of pursuing such a line of conduct, the property is disposed of without their knowledge, and is now held. If this can be done, the security of underwriters is destroyed. There would, it must be confessed, be a difference, if the *300 transaction had taken place in a foreign country, where no application could be made to the underwriters ; but here, when all concerned were on the spot', the parties who were so active,- and without making any communication, must be held to have acted for themselves. In addition to these circumstances, the court, doubtless, will observe, that the plaintiff has received the freight earned by-her, after her being bought in by the supercargo and joint owner. This, it is conceived, is tantamount to fitting out and employing her, and is evidence of her being, in the service of her former owners.
Hamilton in reply. It is difficult to conceive how Shaw and Goold could be connected with the present case; the dissimilarity is so great, it is scarcely possible to imagine how it could be pressed into the service. The case was an endeavour to constitute a total loss of the vessel, on account of a loss on the cargo. It was by the special verdict expressly found, that she could have been repaired for less than half her value ; in the present instance it is as expressly stated, “ That she cannot be repaired for the full value of her when repaired.” I shall, after this preliminary observation, endeavour to shew, that the principles of that determination will bear on this, and materially aid the plaintiff’s demand. For that purpose,- it will be necessary to recur to the general position of the court :• that in insurances, the various subjects are totally distinct j that'in construction of law, vessel, freight, and cargo, are separate interests;* and it is fully conceded, with the opposite side, that the loss of one does not constitute a loss of either of the others. On these data the court proceeded in Shaw and Goold. In that case, there was no inability in the vessel; she could have pursued her voyage with her cargo, here she could not. The ability of a vessel to perform her voyage with her cargo, is the very essence of the contract of assurance upon her: it is the substratum of the policy. The assured warrants that she is so at the commencement of the voyage, and the assurer engages that so she shall continue, against all the perils enumerated, until it be terminated. If the vessel become unable *301 to complete it with her cargo, the court must consider it as a total loss with respect to her, and the policy forfeited. Nothing is now advanced, which is not perfectly reconeileable with the distinctness of the subjects of insurance: for the cause of the loss of -the voyage was wholly the ship’s : it arose from her inability, against which the policy was meant to protect. When that inability could not be removed for half her value, .then she, the very subject of insurance, was technically destroyed, and, abstracted from subsequent circumstances, it became a total loss. The after purchase then, was the only thing which could alter or prevent the result. Suppose her purchased for, and by any other person, how would that vary the underwriter’s liabilities or rights ? In either one case or the other, he is not defrauded or injured. The purchase on his account by the assured, can never be detrimental; he has the vessel at what she cost, and he has also what she sells for. In the case of Saidler and Craig v. Church, the abandonment was overruled, solely because the employing the vessel was deemed a waiver. I must again beg leave to insist on the agency from necessity of the plaintiff, and to deny that being merely passive in cases of abandonment, is equivalent to a positive refusal. The underwriter has SO days, before he is under any obligation to decide on. the offer to abandon; during that period, circumstances may require him to be cautious, and hesitate in pronoun, cing his determination; at this time he is passive. The defendants here refused at once without hesitation. The decision must be whether the offer to abandon ought to have been, and in all future cases must be, repeated after a positive refusal to accept. Living on the spot, does not alter the question. To offer a second time, would be from courtesy : for after one party has explicitly taken his ground on that, the other may act' and make it the line of his future conduct. Whether this rule is to be adopted or mot, is now to be determined.
Per curiam, delivered by Radcliff J. In this case, the
general question is, whether the plaintiff' is entitled to re-
*302 cover a total or a partial loss ? Two objections have been made against the recovery for a total loss.
1st. That the case of a total loss never existed.
2d. That the purchase at St. Christophers, by the supercargo, who Was also a part owner of the ship, and the subsequent sale at New-York, without the consent of the defendant, or a previous offer or tender of the ship to him, amounted to a waiver of the abandonriient, and, an adoption of the vessel as his own.
With respect to the first, it appears that the ship was condemned at St, Christophers, as unfit to.proceed on her voyage, on account of the injuries she had received; and the persons appointed to survey her there, certified, that in their opinion, she could not be repaired for her full value when repaired. It is also admitted, on the part of the defendant, that in consequence of the disasters experienced on the voyage, she was so much injured, that it was impossible, from the high prices of wages and materials, to repair her at St, Christophers for half her value, so as to enable her to bring qn her whole cargo. It is again admitted on the part of the plaintiff, that in the spring following, the ship came to New-York with a light cargo of molasses and rum, being about sufficient for ballast, and that she might have brought a full cargo of rum, which was proved to be very light and buoyant,
On these facts, I am of opinion, that there existed a case of a technical total loss, and that the assured had a right to abandon. The question, in such cases, is not whether the vessel be in a capacity, or in a" situation to be repaired, so as to prosecute her voyage with a half, or any other portion of her cargo, but whether she is capable of proceeding, or of being refitted to proceed, and carry the whole. A vessel is not seaworthy, unless she be in a condition to carry a fu]l cargo. The contrary idea is novel and'inconsistent with every .principle of propriety, and safety in navigation. The vessel was insured to perform her voyage, and carry her cargo from Batavia to New-York. This she was disabled from doing. The enterprize, then*, *303 fore, failed, by means of the perils insured against, and the plaintiff had a right to abandon, and claim a total loss.
The second question is, whether he has waived this right. The vessel was ordered by the court of admiralty at St. Christophers, to be sold for the benefit of all concerned. Tbs supercargo, who was one of the owners, purchased her on account of the assured. The assured had -previously, on receiving advice of her condemnation, and before any notice of the purchase, abandoned his interest to the underwriters, who refused to accept the abandonment. In what manner the supercargo, being also one of the owners, might bo affected by the purchase, it is unnecessary to determine. The question is, whether the plaintiff ratified his acts subsequent to the abandonment, and recognized the purchase as his own. In the case of Saidler and Craig v. Church, after an abandonment, a similar purchase was made, and the assured adopted it as their own, by availing themselves of the advantage it offered, and fitting out and sending the vessel on another voyage for their own account. Under these circumstances, we considered the assured as having affirmed the purchase, and waived -the abandonment.
The present case differs in this, that the plaintiff has done no act to affirm the purchase. He has not appropriated the vessel to his own use, and has not attempted to derive any benefit from the purchase. The vessel was sold at auction on her arrival at New-York, and purchased by a stranger. Although it be not expressly stated in the case, the sale must be presumed to have been made for the benefit of the underwriters. It is objected that the plaintiff ought . again to have offered to deliver them the vessel, or have consulted them as to the propriety of the sale, I think this was not strictly necessary. The abandonment was an offer to cede all his title and the possession of the vessel, as far as •under the circumstances it was capable of being delivered. The plaintiff" was not bound to do more, and it being a case proper for an abandonment, the defendant ought to have accepted it; or, at least, the refusal was at his pefilt He did not accept, and the plaintiff was ucees»
*304 sarilY kft to act as his trustee in the disposition of the .property.. If he executed the trust fairly, he has dischavged his duty, and it was not incumbent on him to follow the defendant, and repeat his application to receive what he ought at first to have accepted. The sale.at auction was .therefore justifiable, and the defendant ought to be charged with a total loss, deducting the proceeds of the sale, and .the value of the freight from St, Christophers to New-York.

 It is supposed that the case alluded to by the learned councel is that of M'Masters, v. Schoolbred, 1 Esp. Rep. 237.

 See the 2d ¿he insurance there was on a policy for tunc,

 The frequent allusion to the case of Saidler and Craig, v. Church, making it in fome degree a part of the prefent, the reporter has thought it neceffary to state the fadts of it as represented in the case made for the opinion of the court. They were, That the insurance made in the name of Thomas White, was made for and on account of the plaintiffs, and that they were the sole owners of the Vessel mentioned in the policy.
That the vessel in her due course on the voyage insured, was captured by a Brench privateer, and carried into Guadaloupe, and that thereby her said voyage to the Havannah was totally lost.
That at Guadaloupe the vessel was duly libelled in the admiralty court, and Was there condemned, and after condemnation was purchased by George Duplex, the master, as for the account of the owners for the fum of eleven hundred and twenty dollars. That the said master was also a part owner. That the owners had since fitted out the said brig and sent her on another voyage.
That as foon as the owners knew of the capture, and before they were informed of the condemnation, or of the purchase by the captain, they gave the Underwriters notice of abandonment.

 They do not seem very separable,according to the decision in the United InsuranceCompany of NewYorkv. Lenox. 1 Lex. Mer. Amer. 197.